**NO. 23-2396**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **Plaintiff/Appellee** | **)** | **Appellate Court No. 23-2396** |
| | **)** | |
| **v.** | **)** | **Appeal from the United States** |
| | **)** | **District Court for the Eastern** |
| **MARCUS MILLSAP** | **)** | **District of Arkansas** |
| | **)** | |
| **Defendant/Appellant** | **)** | **Honorable Brian S. Miller** |
| | **)** | |

**Appeal from the United States District Court
For the Eastern District of Arkansas
The Honorable Brian S. Miller, Presiding
District Court No. 4:17-cr-00293-BSM**

## APPELLANT'S BRIEF

MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Michael@LCArkLaw.com

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Appellant Marcus Millsap appeals his sentence of life imprisonment for conspiracy to violate the Racketeer Influenced Corrupt Organizations Act ("RICO"); aiding and abetting attempted murder in aid of racketeering; and conspiracy to possess with intent to distribute methamphetamine because: 1) the district court erred by denying Millsap's motion to dismiss based the Interstate Agreement on Detainers Act ("IADA"); 2) there was insufficient evidence for Millsap's convictions; 3) the district court erred by admitting hearsay statements; 4) the district court abused its discretion by admitting two photos; 5) the district court abused its discretion by denying Millsap's motion for mistrial; 6) the district court abused its discretion by admitting evidence that Bruce Hurley was killed prior to trial; 7) the district court clearly erred in applying a two-point firearm enhancement; 8) the district court clearly erred in applying a two-point enhancement pursuant to USSG § 2D1.1(b)(12); 9) the district court clearly erred in attributing six criminal-history points for Millsap's two prior state convictions; and 10) the district court erroneously failed to apply USSG § 5G1.3; 11) the district court abused its discretion by considering an improper sentencing factor; and 12) this Court must correct the judgment to note Millsap's pretrial jail credit.

The issues on appeal are both novel and complex; therefore, oral argument is requested in this case. Millsap respectfully requests 15 minutes for oral argument.

Appellate Case: 23-2396     Page: 2     Date Filed: 11/08/2023 Entry ID: 5333954

# TABLE OF CONTENTS

1. Summary of the Case……………………………………………………ii

2. Table of Contents…………………………………………………...iii

3. Table of Authorities…………………………………………viii

4. Statement of Jurisdiction……………………………………....1

5. Statement of the Issues……………………………………………2

6. Statement of the Case………………………………………………..6

7. Summary of the Argument……………………………………………13

8. Argument……………………………………………………...15

   I.    The District Court Erred by Denying Millsap's Motion to Dismiss Based on a Violation of the IADA's Speedy-Trial Provisions.

        A. Article IV of the IADA Applies to Millsap's Case.

        B. No Good Cause for Any of the Continuances Sufficient to Extend the 120-Day Period.

            1. March 7, 2019 Continuance Order.

            2. May 24, 2019 "Continuance."

            3. September 12, 2019 Continuance Order.

        C. Dismissal with Prejudice.

   II.   There Was Insufficient Evidence for Millsap's Convictions.

        A. There Was Insufficient Evidence for Millsap's Convictions.

Appellate Case: 23-2396   Page: 3   Date Filed: 11/08/2023 Entry ID: 5333954

       1. Insufficient Evidence That Millsap Was Associated with the NAE.

       2. Insufficient Evidence that Millsap Agreed to Participate, Either Directly or Indirectly, in the Conduct of the Affairs of the NAE.

   B. Insufficient Evidence of Attempted Murder in Aid of Racketeering.

       1. Insufficient Evidence That Millsap Took Any Substantial Step to Murder Hurley.

       2. Insufficient Evidence That Millsap Had a Purpose to Gain Entrance and Maintain and Increase Position in the NAE.

   C. Insufficient Evidence of Conspiracy to Possess with Intent to Distribute More than 500 Grams of Methamphetamine.

III.   The District Court Erred by Admitting Numerous Hearsay Statements Pursuant to Fed. R. Evid. 801(d)(2)(E).

   A. The District Court Never Found Any Conspiracy by a Preponderance That Would Have Permitted Admission of Statements Pursuant to Fed. R. Evid. 801(d)(2)(E).

   B. Jeffrey Knox's Testimony About What Gullett Told Him.

       1. Knox's Testimony About Gullett Having Sold Drugs and Borrowed Money from Millsap.

       2. Knox's Testimony About Gullett's Calls from Jail.

       3. Knox's Testimony About Millsap Allegedly Paying $30,000 to Kill Hurley.

   C. Knox's Facebook Messages with Odom.

Appellate Case: 23-2396   Page: 4   Date Filed: 11/08/2023 Entry ID: 5333954

D. Duncan's Testimony About Sheila Lackey Telling Him About Opportunity to Steal Truck.

E. Shannon Boyer's Testimony About Gullett Telling Oliver About Missing the Shot on Bruce Hurley.

F. John Fondren's Testimony That Oliver Told Him the $30,000 Was Being Offered to Kill Hurley Rather than Beat Him Up.

G. Paula Enos's Testimony What Shannon Ferguson Told Her the Upcoming Topics for an NAE Meeting Would Be.

H. Ferguson's Testimony About What NAE Members Told Him Why They Beat Him Up Right After Doing So.

I. Robert Chandler Testifying About What Corey Ford Told Him.

J. Loadholt's Facebook Messages Introduced Through Maddox.

    1. Loadholt's Facebook Messages with Bornallah Banks.

    2. Loadholt's Facebook Messages with Gullett.

K. Conclusion.

IV. The Trial Court Abused Its Discretion by Admitting Certain Photos.

A. The Trial Court Abused Its Discretion By Admitting the Photo of Millsap in the Pope County Jail.

B. The Trial Court Abused Its Discretion By Admitting Photos of Millsap's Tattoo of a Motorcycle Clothing Company's Logo.

V. The District Court Abused Its Discretion by Denying Millsap's Motion for Mistrial Based on Juror Intimidation.

VI. The District Court Abused Its Discretion by Permitting the Government to Adduce Evidence That Hurley Had Since Been Killed.

Appellate Case: 23-2396     Page: 5     Date Filed: 11/08/2023 Entry ID: 5333954

A. The Fact That Hurley Was Killed Prior to Trial Was Irrelevant.

B. Any Marginal Relevance the Evidence Had Was Substantially Outweighed by Danger of Unfair Prejudice.

VII.   The District Court Clearly Erred in Applying a Two-Point Firearm Enhancement Pursuant to USSG § 2D1.1(b)(1).

VIII.  The District Court Clearly Erred in Applying a Two-Point Enhancement for Maintaining a Drug Premises.

IX.    The District Court Clearly Erred in Attributing Six Criminal-History Points to Millsap's Two Prior State Drug Convictions That Were Related to the Instant Offense.

X.     The District Court Erroneously Failed to Apply USSG § 5G1.3.

XI.    The District Court Abused Its Discretion by Considering the Fact of Hurley's Murder Against Millsap at Sentencing.

XII.   This Court Must Correct the Judgment to Note Millsap's Pretrial Jail Credit from February 18, 2019 to Sentencing on May 24, 2023.

9. Conclusion……………………………………………………………..58

10. Certificates of Compliance……………………………………………59

11. Certificate of Service…………………………………………………60

12. Addendum

A. Writ of Habeas Corpus Ad Prosequendum (R. Doc. 629)…….Add. 1

B. Order to Lodge Detainer (R. Doc. 717)………………………Add. 2

C. Order for Millsap to remain in USMS custody pending trial…Add. 3 (R. Doc. 739)

D. Order (R. Doc. 1448)…………………………………………Add. 4

Appellate Case: 23-2396   Page: 6   Date Filed: 11/08/2023 Entry ID: 5333954

E.  Judgment (R. Doc. 2772)…………………………………………...Add. 5

F.  Notice of Appeal (R. Doc. 2776)……………………………….Add. 13

Appellate Case: 23-2396    Page: 7    Date Filed: 11/08/2023 Entry ID: 5333954

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>
<u>Supreme Court of the United States</u>
*Dawson v. Delaware*, 503 U.S. 159 (1992)…………………………………….45

*Remmer v. United States*, 347 U.S. 227 (1953)…………………………………...47

*Salinas v. United States*, 522 U.S. 52 (1997)…………………………………..27

*United States v. Mauro*, 436 U.S. 340 (1978)…………………………………15-17

<u>Courts of Appeals</u>
*Baxter v. United States*, 966 F.2d 387 (8th Cir. 1992)……………………………16

*Giblin v. United States*, 829 F.3d 998 (8th Cir. 2016)……………………………43

*Rhodes v. Schoen*, 574 F.2d 968 (8th Cir. 1978)…………………………………16

*United States EEOC v. Technocrest Sys.*, 448 F.3d 1035 (8th Cir. 2006)………...48

*United States v. Atkins*, 250 F.3d 1203 (8th Cir. 2001)………………………..50-51

*United States v. Ballard*, 872 F.3d 883 (8th Cir. 2017)………………………56-57

*United States v. Benitez*, 34 F.3d 1489 (9th Cir. 1994)…………………………...21

*United States v. Brandao*, 539 F.3d 44 (1st Cir. 2008)…………………………...26

*United States v. Brown*, 946 F.2d 58 (8th Cir. 1991)……………………………...33

*United States v. Brumley*, 820 Fed. Appx. 490 (8th Cir. 2020)…………………...49

*United States v. Castro-Perez*, 749 F.3d 1209 (10th Cir. 2014)…………………...51

*United States v. Clark*, 695 Fed. Appx. 999 (8th Cir. 2017)……………………...25

*United States v. Cowling*, 648 F.3d 690 (8th Cir. 2011)…………………………...35

*United States v. Dooley*, 580 F.3d 682 (8th Cir. 2009)…………………………...15

Appellate Case: 23-2396    Page: 8    Date Filed: 11/08/2023 Entry ID: 5333954

*United States v. Eubanks*, 591 F.2d 513 (9th Cir. 1979)……………………………35

*United States v. Garcia-Martinez*, 254 F.3d 16 (1st Cir. 2001)…………………..21

*United States v. Gomez-Diaz*, 911 F.3d 931 (8th Cir. 2018)……………………...47

*United States v. Green*, 600 F.2d 154 (8th Cir. 1979)……………………………37

*United States v. Handy*, 668 F.2d 407 (8th Cir. 1982)……………………………36

*United States v. Harris*, 695 F.3d 1125 (10th Cir. 2012)…………………………27

*United States v. Hernandez*, 712 F.3d 407 (8th Cir. 2013)………………………53

*United States v. Hodge*, 469 F.3d 749 (8th Cir. 2006)……………………………57

*United States v. Jensen*, 141 F.3d 830 (8th Cir. 1998)……………………...…....33

*United States v. Kragness*, 830 F.2d 842 (8th Cir. 1987)…………………………27

*United States v. Lakoskey*, 462 F.3d 965 (8th Cir. 2006)…………………………44

*United States v. Ledbetter*, 929 F.3d 338 (6th Cir. 2019)………………………..31-32

*United States v. Lemon*, 239 F.3d 968 (8th Cir. 2001)……………………………43

*United States v. Lopez*, 24 F.4th 1205 (8th Cir. 2022)……………………...…....52

*United States v. Lopez*, 416 F.3d 713 (8th Cir. 2005)……………………………50

*United States v. Manzella*, 782 F.2d 533 (5th Cir. 1986)…………………………26

*United States v. McKay*, 431 F.3d 1085 (8th Cir. 2005)…………………………43

*United States v. McKenzie*, 79 F.4th 924 (8th Cir. 2023)…………………………56

*United States v. McKinney*, 395 F.3d 837 (8th Cir. 2005)………………………..23

*United States v. Moore*, 522 F.2d 1069 (9th Cir. 1975)…………………………..35

Appellate Case: 23-2396     Page: 9     Date Filed: 11/08/2023 Entry ID: 5333954

*United States v. Neal*, 564 F.3d 1351 (8th Cir. 2009)……………………………21

*United States v. Newsom*, 452 F.3d 593 (6th Cir. 2006)…………………………45

*United States v. Pardue*, 363 F.3d 695 (8th Cir. 2004)…………………………...16

*United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981)…………………………..27

*United States v. Pinkin*, 675 F.3d 1090 (8th Cir. 2012)…………………………..53

*United States v. Prieskorn*, 658 F.2d 631 (8th Cir. 1981)………………………...33

*United States v. Robertson*, 948 F.3d 912 (8th Cir. 2020)………………………..48

*United States v. Rutherford*, 371 F.3d 634 (9th Cir. 2004)………………………47

*United States v. Sanchez-Garcia*, 685 F.3d 745 (8th Cir. 2012)…………………47

*United States v. Simtob*, 485 F.3d 1058 (8th Cir. 2007)…………………………..47

*United States v. Spotted Elk*, 548 F.3d 641 (8th Cir. 2008)………………………35

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994)……………………………30-31

*United States v. Thompson*, 690 F.3d 977 (8th Cir. 2012)………………………..24

*United States v. Toliver*, 793 Fed. Appx. 151 (4th Cir. 2010)……………………46

*United States v. Weiland*, 284 F.3d 878 (8th Cir. 2002)…………………………..53

*United States v. Wells*, 153 Fed. Appx. 417 (9th Cir. 2005)………………………36

*United States v. West*, 15 F.3d 119 (8th Cir. 1994)……………………………….33

*United States v. Winnick*, 954 F.3d 1103 (8th Cir. 2020)…………………………55

*United States v. Wood*, 834 F.2d 1382 (8th Cir. 1987)……………………………35

Appellate Case: 23-2396    Page: 10    Date Filed: 11/08/2023 Entry ID: 5333954

District Courts

*United States v. Morales-Ortuno*, 879 F. Supp. 2d 608)……………………………52
(E.D. Tex. Jul. 23, 2012)

*United States v. Pope*, 183 F.Supp.2d 773 (D. Md. Nov. 9, 2001)……………….24

*United States v. Wilson*, 490 F.Supp. 713 (E.D. Mich. 1980)………………..…….39

State Courts

*Burris v. State*, 78 A.3d 371 (Md. 2013)…………………………………………45

*Gallimore v. State*, 944 P.2d 939 (Okla. 1997)………………………………16, 20

*People v. Golochowicz*, 319 N.W.2d 518 (Mich. 1982)…………………………..49

*Williams v. State*, 7 Ark. App. 151, 645 S.W.2d 697 (1983)……………………..35

**Statutes/Rules**

18 U.S.C. § 1959…………………………………………………...29, 31

18 U.S.C. § 3231……………………………………………………...1

18 U.S.C. § 3742……………………………………………………...1

28 U.S.C. § 1291……………………………………………………...1

Fed. R. Crim. P. 36…………………………………………..................57

Fed. R. Evid. 403………………………………………………….....7, 48

Fed. R. Evid. 404…………………………………………………….43-44

Fed. R. Evid. 801………………………………………………...13, 34-36, 39

Interstate Agreement on Detainers Act, 18 U.S.C. App. III………,,,,,,..6, 13, 15-24

USSG § 2D1.1…………………………………………………..12-13, 49-50, 52

USSG § 4A1.2…………………………………………………………53

xi

Appellate Case: 23-2396   Page: 11   Date Filed: 11/08/2023 Entry ID: 5333954

USSG § 5G1.3……………………………………………………..13, 55-56

Appellate Case: 23-2396   Page: 12   Date Filed: 11/08/2023 Entry ID: 5333954

# JURISDICTIONAL STATEMENT

On February 5, 2019, Millsap was indicted. R. Doc. 614. Jurisdiction in the trial court was based on 18 U.S.C. § 3231 as Millsap was charged with offenses against the laws of the United States. He was found guilty of all three charged offenses following a jury trial, and sentence was imposed by judgment filed on May 26, 2023. R. Doc. 2772. Millsap filed his notice of appeal on June 7, 2023. R. Doc. 2775. This Court's jurisdiction is based on 28 U.S.C. § 1291, which provides for jurisdiction over a final judgment from a United States District Court, and 18 U.S.C. § 3742(a)(1), which permits a criminal defendant to appeal a sentence that was imposed in violation of law.

Appellate Case: 23-2396     Page: 13     Date Filed: 11/08/2023 Entry ID: 5333954

## STATEMENT OF THE ISSUES

I.  The District Court Erred by Denying Millsap's Motion to Dismiss Based on a Violation of the IADA's Speedy-Trial Provisions.
    *United States v. Dooley*, 580 F.3d 682 (8th Cir. 2009)

    A.  Article IV of the IADA Applies to Millsap's Case.
        *United States v. Mauro*, 436 U.S. 340, 351 (1978)

    B.  No Good Cause for Any of the Continuances Sufficient to Extend the 120-Day Period.

        1.  March 7, 2019 Continuance Order.

        2.  May 24, 2019 "Continuance."
            *United States v. Neal*, 564 F.3d 1351 (8th Cir. 2009)

        3.  September 12, 2019 Continuance Order.

    C.  Dismissal with Prejudice.
        *United States v. McKinney*, 395 F.3d 837 (8th Cir. 2005)

II. There Was Insufficient Evidence for Millsap's Convictions.
    *United States v. Thompson*, 690 F.3d 977 (8th Cir. 2012)

    A.  There Was Insufficient Evidence for Millsap's Convictions.
        *United States v. Phillips*, 664 F.2d 971 (5th Cir. 1981)

        1.  Insufficient Evidence That Millsap Was Associated with the NAE.
            *United States v. Brandao*, 539 F.3d 44 (1st Cir. 2008)

        2.  Insufficient Evidence that Millsap Agreed to Participate, Either Directly or Indirectly, in the Conduct of the Affairs of the NAE.
            *United States v. Kragness*, 830 F.2d 842 (8th Cir. 1987)

2

B. Insufficient Evidence of Attempted Murder in Aid of Racketeering.

    1. Insufficient Evidence That Millsap Took Any Substantial Step to Murder Hurley.

    2. Insufficient Evidence That Millsap Had a Purpose to Gain Entrance and Maintain and Increase Position in the NAE.
    *United States v. Ledbetter*, 929 F.3d 338 (6th Cir. 2019)

C. Insufficient Evidence of Conspiracy to Possess with Intent to Distribute More than 500 Grams of Methamphetamine.
*United States v. West*, 15 F.3d 119 (8th Cir. 1994)

III. The District Court Erred by Admitting Numerous Hearsay Statements Pursuant to Fed. R. Evid. 801(d)(2)(E).
*United States v. Cowling*, 648 F.3d 690 (8th Cir. 2011)

A. The District Court Never Found Any Conspiracy by a Preponderance That Would Have Permitted Admission of Statements Pursuant to Fed. R. Evid. 801(d)(2)(E).
*United States v. Wells*, 153 Fed. Appx. 417 (9th Cir. 2005)

B. Jeffrey Knox's Testimony About What Gullett Told Him.

    1. Knox's Testimony About Gullett Having Sold Drugs and Borrowed Money from Millsap.

    2. Knox's Testimony About Gullett's Calls from Jail.

    3. Knox's Testimony About Millsap Allegedly Paying $30,000 to Kill Hurley.
    *United States v. Green*, 600 F.2d 154 (8th Cir. 1979)

C. Knox's Facebook Messages with Odom.

Appellate Case: 23-2396   Page: 15   Date Filed: 11/08/2023 Entry ID: 5333954

D. Duncan's Testimony About Sheila Lackey Telling Him About Opportunity to Steal Truck.

E. Shannon Boyer's Testimony About Gullett Telling Oliver About Missing the Shot on Bruce Hurley.
*United States v. Wilson*, 490 F.Supp. 713 (E.D. Mich. 1980)

F. John Fondren's Testimony That Oliver Told Him the $30,000 Was Being Offered to Kill Hurley Rather than Beat Him Up.

G. Paula Enos's Testimony What Shannon Ferguson Told Her the Upcoming Topics for an NAE Meeting Would Be.

H. Ferguson's Testimony About What NAE Members Told Him Why They Beat Him Up Right After Doing So.

I. Robert Chandler Testifying About What Corey Ford Told Him.

J. Loadholt's Facebook Messages Introduced Through Maddox.

   1. Loadholt's Facebook Messages with Bornallah Banks.

   2. Loadholt's Facebook Messages with Gullett.

K. Conclusion.

IV.   The Trial Court Abused Its Discretion by Admitting Certain Photos.
*United States v. McKay*, 431 F.3d 1085 (8th Cir. 2005)

A. The Trial Court Abused Its Discretion By Admitting the Photo of Millsap in the Pope County Jail.
*United States v. Lakoskey*, 462 F.3d 965 (8th Cir. 2006)

B. The Trial Court Abused Its Discretion By Admitting Photos of Millsap's Tattoo of a Motorcycle Clothing Company's Logo.
*United States v. Newsom*, 452 F.3d 593 (6th Cir. 2006)

V.   The District Court Abused Its Discretion by Denying Millsap's Motion for Mistrial Based on Juror Intimidation.

Appellate Case: 23-2396   Page: 16   Date Filed: 11/08/2023 Entry ID: 5333954

*Remmer v. United States*, 347 U.S. 227 (1953)

VI. The District Court Abused Its Discretion by Permitting the Government to Adduce Evidence That Hurley Had Since Been Killed.

    A. The Fact That Hurley Was Killed Prior to Trial Was Irrelevant.
    *United States EEOC v. Technocrest Sys.*, 448 F.3d 1035 (8th Cir. 2006)

    B. Any Marginal Relevance the Evidence Had Was Substantially Outweighed by Danger of Unfair Prejudice.
    *People v. Golochowicz*, 319 N.W.2d 518 (Mich. 1982)

VII. The District Court Clearly Erred in Applying a Two-Point Firearm Enhancement Pursuant to USSG § 2D1.1(b)(1).
*United States v. Lopez*, 416 F.3d 713 (8th Cir. 2005)

VIII. The District Court Clearly Erred in Applying a Two-Point Enhancement for Maintaining a Drug Premises.
*United States v. Morales-Ortuno*, 879 F. Supp. 2d 608 (E.D. Tex. Jul. 23, 2012)

IX. The District Court Clearly Erred in Attributing Six Criminal-History Points to Millsap's Two Prior State Drug Convictions That Were Related to the Instant Offense.
*United States v. Pinkin*, 675 F.3d 1090 (8th Cir. 2012)

X. The District Court Erroneously Failed to Apply USSG § 5G1.3
*United States v. Winnick*, 954 F.3d 1103 (8th Cir. 2020)

XI. The District Court Abused Its Discretion by Considering the Fact of Hurley's Murder Against Millsap at Sentencing.
*United States v. Ballard*, 872 F.3d 883 (8th Cir. 2017)

XII. This Court Must Correct the Judgment to Note Millsap's Pretrial Jail Credit from February 18, 2019 to Sentencing on May 24, 2023.

5

## STATEMENT OF THE CASE

On February 5, 2019, Millsap was indicted. R. Doc. 614. A second superseding indictment with the same charges was filed on September 3, 2019. R. Doc. 1058.

Millsap filed a motion to dismiss with prejudice under the IADA on March 19, 2020, R. Doc. 1443, which the district court denied on March 23, 2020. Add. 4; R. Doc. 1439, 1448.

On October 19, 2020, Millsap filed a motion to exclude a photo of Millsap and others in the Pope County Jail doing a "Heil Hitler" salute. R. Doc. 1700.

Millsap's jury trial began September 8, 2021. (Trial T. 1).

Law enforcement officer Tony Haley testified he worked with a confidential informant to purchase meth from Millsap in 2008, and Millsap was subsequently convicted of meth delivery and witness retaliation. (Trial T. 43-46).

Haley worked with a confidential informant named Bruce Hurley who did a controlled buy of two ounces of meth from Millsap on May 1, 2014. (Trial T. 38, 46-52). Officers then pulled over Millsap's car and found 1.7 grams of meth and the money Hurley used to buy the meth. (Trial T. 55). Millsap subsequently entered a conditional no-contest plea to meth delivery and possession of meth with purpose to deliver whereby he was permitted to appeal a suppression issue. (Trial

6

T. 58-60). Millsap's convictions were affirmed, and Millsap went into Arkansas custody to serve his sentence on April 6, 2016. (Trial T. 60).

Haley testified Hurley contacted him January 4, 2016 to report an incident. (Trial T. 61). Millsap then approached and objected to any mention that Bruce Hurley had been killed prior to trial, arguing that such evidence was irrelevant and overly prejudicial pursuant to Fed. R. Evid. 403. (Trial T. 61-62). The government argued Hurley being killed was relevant to explain why he was not there to testify about the attempted-murder count. (Trial. T. 63). The trial court overruled Millsap's objection and Haley then testified that Hurley was killed on May 2, 2016 and the case was still under investigation. (Trial T. 69).

Over Millsap's objection, government witness Jeffrey Knox was permitted to testify to numerous statements attributed to Gullett. (Trial T. 226-232, 324-325, 333).

Over Millsap's objection, Knox testified Gullett called him from jail and told him to go to California to get meth from his supplier there, and that he had previously sold meth to Millsap. (Trial. T. 324-327). Knox later testified Gullett told him Millsap was facing a delivery charge and wanted Bruce Hurley killed to avoid conviction, and that he would pay $30,000 to have it done. (Trial T. 333).

Appellate Case: 23-2396   Page: 19   Date Filed: 11/08/2023 Entry ID: 5333954

Over Millsap's objection, the government introduced Facebook messages between Knox and Erik Odom from March 23, 2016 through Knox. (Trial T. 279-280).

Over Millsap's objection, Kelly Duncan testified that his "homegirl" Sheila Lackey called him and offered to split $30,000 with him if he stole a particular truck. (Trial T. 579). Duncan testified Millsap ultimately had Gullett give him two pounds of meth as compensation for his work getting the truck. (Trial T. 588).

Over Millsap's objection, Shannon Boyer testified that she heard Gullett tell Oliver he had missed the shot on Bruce Hurley, and that other men were mocking Gullett for missing. (Trial T. 634-635). Boyer testified Gullett said he would have gotten $40,000 if he shot Hurley. (Trial T. 636).

Over Millsap's objection, John Fondren testified Oliver clarified to him that the $30,000 offer was to kill Hurley rather than beat him up. (Trial T. 755-760).

NAE member Buster Keeton testified Millsap was not a member of the NAE. (Trial T. 935).

Over Millsap's objection, Paula Enos testified Shannon Ferguson told her one of the main topics for the upcoming NAE meeting was to discuss rumors about Kacie Lewis working with police. (Trial T. 1054-1055).

On September 16, 2021, the district court informed the parties that two jurors were "alarm[ed]" when Millsap's wife "looped around in [her] truck and

8

took off real fast" as they walked up the street the night prior. (Trial. T. 1116). When another juror walked to their car the, they were alarmed by a "menacing" person standing by their car. (Trial. T. 1116). This occurred after Millsap's wife was removed from the courtroom based on her in-court conduct. (Trial T. 1173). Millsap moved for a mistrial based on the jurors' reports of threatening conduct to them outside of court. (Trial T. 1171). The district court denied the motion. (Trial T. 1172-1174).

Over Millsap's objection, Timothy Ferguson testified NAE members told him they beat him up and broke several facial bones as retaliation for cooperating with the law enforcement against the NAE. (Trial T. 1252-1253). The district court acknowledged these statements were offered for the truth of the matters asserted within in them, but admitted them nonetheless. (Trial T. 1253).

Over Millsap's objection, Robert Chandler was permitted to testify Corey Ford told him he and Gullett were pulled over on their way to Millsap's home, tossed the drugs they were carrying, and then had to retrieve them. (Trial T. 1503-1504).

Over Millsap's objection, the district court admitted several Facebook posts attributed to Loadholt during Maddox's testimony. (Trial T. 1755-1769). The district court admitted Facebook messages between Loadholt and Bornallah Banks

from November 17, 2016 where Banks messages Loadholt to call him and Loadholt responds that Banks is "gonna be pissed." (Trial T. 1759).

Over Millsap's objection, the district court also admitted Facebook messages between Loadholt and Gullett. (Trial T. 1761). Loadholt messaged Gullett asking if something was wrong and providing a phone number. (Trial T. 1762). Loadholt messaged Gullett he wanted to see Gullett as soon as possible. (Trial T. 1762). Loadholt messaged Gullet about trying to collect "seven bands." (Trial T. 1763-1764). There were several messages where Gullett and Loadholt attempt to arrange a meetingw ith one another. (Trial T. 1764-1765). Loadholt tells Gullet to "bring that banger with you" because it did not belong to him. (Trial T. 1765). Loadholt messages Gullett, "I have invested a lot more in you than a funky ass bike, though, so just make it a priority to get with me." (Trial T. 1766). Loadholt later messages Gullett "I'm glad you found or got a lead on what weak ass mother fucker robbed you." (Trial T. 1766). Gullett responds: "Oh, bro, I went to Cali days ago. That's when they robbed me. Anyways, went and chilled with my people, and within an hour we found bird." (Trial T. 1767). Later on, Loadholt messages Gullett to bring the "banger" back to Loadholt's aunt's house. (Trial. T. 1768). On July 31, 2016, Loadholt messages Gullett: "Curious if you dropped that off and why I haven't heard from you about that six or anything else." (Trial T. 1768). Loadholt then messages Gullett: "I need my money, and I think you are taking advantage of our

10

so-called friendship like you doing the rest of these motherfuckas." (Trial T. 1768). Gullett responds asking Loadholt for an account to put the money in. (Trial. T. 1768). Loadholt messaged Gullett that he was in Long Beach. (Trial T. 1769).

Maddox testified Millsap had a tattoo of an iron Cross on his left forearm, and the government introduced a photo of the tattoo through Maddox. (Trial T. 1794-1795). Over Millsap's objection, the government then introduced the photo of Millsap and other inmates in the Pope County jail doing a "Heil Hitler" salute in 2009. (Trial T. 1795-1796).

Millsap introduced evidence that his tattoo of a cross was an image of the motorcycle clothing company Hellanbach's logo. (Trial T. 1824). Maddox conceded that the tattoo contained the word "Hellanbach" on the cross, that a Hellanbach tattoo was not a gang tattoo, and that Millsap did not have tattoos explicitly associated with the NAE. (Trial T. 1824-1825).

At the close of the government's case, Millsap moved for a judgment of acquittal on all three counts, which the trial court denied. (Trial T. 1887-1922).

In closing arguments, the government argued Millsap's cross tattoo proved he was a white supremacist or NAE member., and to the Heil Hitler photo as proof of NAE association (Trial T. 2056-2058).

On September 24, 2021, the jury found Millsap guilty of all three counts as charged. (Trial T. 2145-2147).

11

Millsap filed a motion for judgment of acquittal on September 29, 2021, which the district court denied on October 25, 2021. R. Doc. 2266, 2302.

Millsap's sentencing occurred on May 24, 2023. (Sent. T. 1). The district court overruled Millsap's objections to two two-point enhancements pursuant to USSG § 2D1.1(b)(1) and USSG § 2D1.1(b)(12). (Sent. T. 8-9, 17). The district court overruled Millsap's objection to treating his two prior convictions in paragraphs 68-69 of the PSR as "prior sentences" for criminal-history purposes. (Sent. T. 9). The district court granted Millsap's request for pretrial jail credit for time spent in federal custody since February 2019. (Sent. T. 18).

During sentencing, the district court confirmed that "Hurley ended up being killed at some point after," and commented that Hurley was subsequently killed following the alleged attempted murder against him, stating: "I thought you made the next step, and he did get up getting killed . . . ." (Sent. T. 35-36).

The district court sentenced Millsap to life imprisonment for the RICO conspiracy and drug conspiracy and 120 months of imprisonment on the attempted-murder count with all sentences to run concurrently. (Sent. T. 42).

On May 26, 2023, the district court entered judgment. Add. 5; R. Doc. 2772. Millsap filed a timely notice of appeal on June 7, 2023. Add. 13; R. Doc. 2776.

## SUMMARY OF THE ARGUMENT

The district court erred by denying Millsap's motion to dismiss based on a violation of the IADA's speedy-trial provisions.

Next, there was insufficient evidence for any of Millsap's convictions.

The district court erred by admitting numerous hearsay statements pursuant to Fed. R. Evid. 801(d)(2)(E) that were not made in furtherance and/or during the course of the conspiracy.

The trial court abused its discretion by admitting a photo of Millsap and other inmates at the Pope County Jail doing a "Heil Hitler" salute in 2009 because such evidence was irrelevant and overly prejudicial. The trial court abused its discretion by admitting a photo of Millsap's cross tattoo as proof of gang membership when it was actually the logo of a motorcycle clothing company.

The district court abused its discretion by denying Millsap's motion for mistrial based on juror intimidation.

The district court clearly erred in applying two-point enhancements pursuant to USSG § 2D1.1(b)(1) and 2D1.1(b)(12).

The district court clearly erred in attributing six criminal-history points to two of Millsap's prior state convictions that were related to the instant offenses.

The district court erroneously failed to apply USSG § 5G1.3.

13

The district court abused its discretion by considering an improper factor in sentencing Millsap to life imprisonment.

Lastly, this Court must correct the judgment to note Millsap's pretrial jail credit from February 18, 2019 to sentencing on May 24, 2023.

Appellate Case: 23-2396    Page: 26    Date Filed: 11/08/2023 Entry ID: 5333954

# ARGUMENT

## I. The District Court Erred by Denying Millsap's Motion to Dismiss Based on a Violation of the IADA's Speedy-Trial Provisions.

The district erred in denying Millsap's motion to dismiss the indictment under the IADA. Article IV of the IADA applied to Millsap's case and the United States failed to try him within 120 days as required by law. The government's bad faith warranted dismissal with prejudice. Millsap's convictions must be reversed and dismissed with prejudice accordingly.

This Court reviews de novo a district court's denial of a motion to dismiss an indictment under the IADA and reviews the factual findings that support that decision for clear error. *United States v. Dooley*, 580 F.3d 682, 685 (8th Cir. 2009).

### A. Article IV of the IADA Applies to Millsap's Case.

Article IV of the IADA provides the means by which a prosecutor in one jurisdiction who has lodged a detainer against a prisoner in another state can secure the prisoner's presence for disposition of outstanding charges in that first jurisdiction. *United States v. Mauro*, 436 U.S. 340, 351 (1978). Once a prosecutor files a detainer against the prisoner, the prosecutor can have him made available by presenting to the officials of the State in which the prisoner is incarcerated with a "written request for temporary custody or availability." IADA at Art. IV(a).

Once a prosecutor obtains the presence of a prisoner, "trial shall be commenced within [120] days of the arrival of the prisoner in the receiving state,

15

but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." IADA at Art. IV(c). The indictment shall be dismissed if the prisoner is not brought to trial within the 120-day period. IADA at Art. V(c).

The IADA "shall be liberally construed as to effectuate its purposes . . . ." IADA at Art. IX. The IADA's purposes are "to ensure prompt disposition of outstanding charges in order to implement a prisoner's right to a speedy trial and to prevent interference with his participation in treatment and rehabilitation programs." *Rhodes v. Schoen*, 574 F.2d 968, 969 (8th Cir. 1978). The IADA is "meant to prevent the government from gaining advantages against a defendant by lodging a detainer against him without assuming the responsibilities arising from that action." *Gallimore v. State*, 944 P.2d 939, 942 (Okla. 1997) (citing *United States v. Mauro*, 436 U.S. 340 (1978)).

For the IADA to apply, the defendant must be "subject to a term of imprisonment" rather than mere pretrial custody. *See United States v. Pardue*, 363 F.3d 695 (8th Cir. 2004). The provisions of the IADA are triggered when a detainer is filed with the custodial (sending) state by the receiving jurisdiction having untried charges pending against the prisoner. *Mauro*, 436 U.S. at 343; *Baxter v. United States*, 966 F.2d 387, 389 (8th Cir. 1992).

16

Millsap was subject to imprisonment in that he was serving a term of imprisonment in the Arkansas Department of Correction ("ADC") at the time the superseding indictment was filed on February 5, 2019. Add 48; R. Doc. 629; R. Doc. 984, at 2; (Mot. TR. 48, 61, 63, 72). This element is satisfied.

Next, there was a detainer filed with the sending state. Specifically, on February 19, 2019, the district court entered an order to lodge a detainer directing the USMS to file a detainer with the appropriate custodial authority which constituted a hold on Millsap. Add. 2; R. Doc. 717. The detainer was filed against Millsap with the ADC on February 20, 2019. R. Doc. 926-1, at 1. The detainer itself notes the "notice and speedy trial requirements of [IADA] APPLY to this Detainer because the Detainer is based on pending Federal criminal charges which have not yet been tried." R. Doc. 926-1, at 1.

On February 21, 2019, the magistrate judge entered an order that Millsap was ordered to remain in the custody of the USMS pending trial on the federal indictment. Add. 3; R. Doc. 739. Millsap was never returned to State custody.

In *Mauro*, the Supreme Court of the United States noted:

> Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions. And once a detainer has been lodged, the United States has precipitated the very problems with which the Agreement is concerned.

17

436 U.S. at 361-362. Article IV thus clearly applied to Millsap's case, including the 120-day speedy-trial requirement.

Millsap first appeared in federal court for arraignment on the indictment on February 19, 2019, R. Doc. 716, meaning the 120-day period began on that date and expired on June 18, 2019. The United States recognized this deadline when it requested the district court reset Millsap's jury trial for an earlier setting before June 18, 2019. R. Doc. 984 at 1-2. Thus, there must have been good cause shown for continuances beyond this date in open court with Millsap and his counsel present in order to survive IADA dismissal accordingly.

### B. No Good Cause for Any of the Continuances Sufficient to Extend the 120-Day Period.

Good cause was never shown for a continuance in open court with Millsap and his counsel present. Millsap was arraigned on February 19, 2019, and his case was set for jury trial on March 25, 2019. R. Doc. 716, 718.

### 1. March 7, 2019 Continuance Order.

On March 7, 2019, the district court entered an order to continue the March 25, 2019 jury-trial setting to October 28, 2019 on codefendant Brittany Conner's motion. R. Doc. 842. There was no hearing associated with the district court's ruling on this motion, and the district court never made a finding that there was good cause for purposes of tolling the speedy-trial provisions of the IADA.

18

On March 13, 2019, Millsap filed a request to be returned to Arkansas state custody. R. Doc. 871. The United States filed a response in opposition. R. Doc. 893. The district court denied Millsap's request. R. Doc. 956.

## 2. May 24, 2019 "Continuance."

On May 13, 2019, the United States filed a motion to determine the applicability of the IADA as to Millsap. R. Doc. 984. The United States requested that Millsap's jury trial be moved up to sometime prior to June 18, 2019 if the IADA was found to apply. R. Doc. 984, at 1-2.

On May 24, 2019, the district court granted the government's motion to set a jury trial before June 18, 2019, but then immediately granted the government's motion to reinstate the October 28, 2019 trial date. R. Doc. 1005, 1009. Specifically, the prosecutor stated: "I move for a continuance of the trial date. Well, I don't move for a continuance of the current trial date. What I move is I move to set the trial for a time in June prior to the running of the IADA, speedy trial time, and then I request a continuance of that trial date to the [current] October setting." (Mot. TR. 66). The district court granted the motion to set the case before June 19th and then immediately granted the motion to continue the jury trial back to the October 28th setting, finding good cause for doing so. (Mot. TR. 73). The district court never actually set a date prior to June 19, 2019 for trial.

19

Firstly, there was no actual modification of the jury-trial date setting it within the IADA speedy-trial period. The district court never actually set a new trial date prior to June 19, 2019, and Millsap's October 28, 2019 trial date never actually changed. There was no continuance for good cause because there was no actual continuance.

Even if this Court finds that the district court failing to set an actual trial date before June 19, 2019 was sufficient to reset Millsap's trial within the 120-day period, the subsequent "continuance" back to the already scheduled October 28, 2019 trial date was not based on good cause. The government's failure to realize the IADA implications of its own actions until just prior to the expiration of the IADA's speedy-trial period is not a basis for good cause. Rather, this "continuance" request was a farce, a ruse to pay lip service to the IADA while actively skirting its speedy-trial requirements. The "continuance" was the product of improper gamesmanship by the government and district court to circumvent the IADA's speedy-trial provisions.

"It is incumbent upon the State, when invoking the IADA, to verify that it is able to timely try the defendant against whom the detainer is being lodged. To find otherwise would be to render useless the time limitations contained within the Act specifically designed to avoid the problem of delay." *Gallimore v. State*, 944 P.2d

939, 945 (Okla. Crim. App. 1997). Failure to do so is not good cause for delay beyond the 120-day period. *See id.*

In an analogous context, courts have noted a "ruse exception" to the speedy-trial rule when state charges are filed in an effort to avoid the time constraints of federal speedy-trial rules. *See, e.g.*, *United States v. Garcia-Martinez*, 254 F.3d 16 (1st Cir. 2001). Under this exception, state proceedings may trigger the federal Speedy Trial Act upon a showing that the state detention was for the sole or primary purpose of preparing for the federal prosecution. *Id.* at 20. This exception exists because the Speedy Trial Act would lose all force if federal authorities were permitted to have state authorities detain a defendant until federal authorities are prepared to file charges and/or proceed to trial. *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994). This Court routines applies the principles of the Speedy Trial Act to determine IADA issues. *See, e.g.*, *United States v. Neal*, 564 F.3d 1351 (8th Cir. 2009). Analogously, this Court should find that the May 24, 2019 "continuance" here was a ruse to circumvent the IADA and was thus insufficient to toll the speedy-trial provisions of the IADA.

The May 24, 2019 order was not a continuance as Millsap's jury-trial date never actually changed. Even if it was a continuance for IADA purposes, it was not for good cause shown. The IADA speedy-trial provisions were violated, and Millsap's convictions must be reversed accordingly.

Appellate Case: 23-2396    Page: 33    Date Filed: 11/08/2023 Entry ID: 5333954

### 3. **September 12, 2019 Continuance Order.**

On September 11, 2019, the government filed a motion to continue the October 28, 2019 jury trial noting Millsap's objection to the continuance. R. Doc. 1135. On September 12, 2019, the district court entered an order granting the government's requested continuance and resetting the jury trial to March 23, 2020. R. Doc. 1142. The district court did not hold any hearing on the government's motion for continuance, and neither Millsap nor his attorneys were present for the ruling in open court. This was insufficient to constitute good cause for purpose of tolling the IADA's speedy-trial provisions accordingly.

Even if this Court finds that the May 24, 2019 ruling was sufficient to toll the IADA's speedy-trial provisions—which Millsap does not concede—the subsequent September 2019 continuance order was insufficient and the 120-day period expired either way.

Millsap's convictions must be reversed and dismissed based on this violation of the IADA's speedy-trial provision accordingly.

### C. **Dismissal with Prejudice.**

To determine whether an indictment should be dismissed with or without prejudice, this Court must consider: 1) the seriousness of the offense; 2) the facts and circumstances leading to dismissal; and 3) the impact of a further indictment on the administration of the IADA and on the administration of justice. IADA at

Art. IX(1). Dismissal without prejudice is proper when the government's IADA violation is caused by mere error as opposed to bad faith or a pattern of negligence. *See United States v. McKinney*, 395 F.3d 837 (8th Cir. 2005).

Millsap was not charged with a capital offense, although he did face (and ultimately received) a sentence of life imprisonment. The charged offenses were at least somewhat serious accordingly. However, the other factors weigh heavily in favor of dismissal with prejudice.

The government's bad faith weighs in favor of dismissal with prejudice. This Court has pointed to bad faith as a key factor in determining whether a lack of compliance with IADA warrants dismissal with prejudice. *See, e.g., id*. Once the government realized it had an IADA Article IV speedy-trial dismissal approaching, it sought a reset of the trial date to pay lip service to the IADA before *immediately* requesting a continuance back to the original trial date. This was not an attempt to comply with the IADA but rather to get around it. This was no mistake but rather a deliberate attempt to circumvent the IADA's strict requirements. The government's motion asked the district court to create a trial date—one which was never actually set to a date certain despite Millsap's request to do so, (Mot. TR. 69)—for the sole purpose of getting within the IADA's timeframe and then immediately continuing it. The government then requested to withdraw the

Appellate Case: 23-2396    Page: 35    Date Filed: 11/08/2023 Entry ID: 5333954

detainer in another effort to circumvent the IADA. R. Doc. 984, at 10. The government's bad faith warrants dismissal with prejudice.

A "dismissal without prejudice in this case would be an affront [to] the administration of the IAD[A] . . . ." *United States v. Pope*, 183 F.Supp.2d 773, 779 (D. Md. Nov. 9, 2001). "Such a result would trivialize the violation and fly in the face of the Supreme Court's explication of the purpose behind the IAD[A]." *Id.* The government would be permitted to temporarily reset a prisoner's jury trial to a date within the 120-day period for seconds before immediately requesting a continuance months or even years beyond the IADA's speedy-trial limitations.

This Court cannot countenance such a deliberate attempt to get around the IADA. Further, "[a]llowing re-prosecution . . . would send a message to state prisoners who are transported to federal court for prosecution that by invoking their IAD[A] rights they risk even *greater* uncertainty down the road (i.e., possible re-indictment) if their rights are violated." *Id.* This Court must reverse and dismiss Millsap's convictions with prejudice accordingly.

## II. There Was Insufficient Evidence for Millsap's Convictions.

This Court reviews the sufficiency of the evidence *de novo*, reversing when no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Thompson*, 690 F.3d 977, 993 (8th Cir. 2012) (citation omitted). In resolving conflicting views of the evidence, the Court accepts "all

24

reasonable inferences supported by the evidence," *id.*, viewing the evidence in the light most favorable to the government. *United States v. Clark*, 695 Fed. Appx. 999, 1000 (8th Cir. 2017).

There was insufficient evidence for any of Millsap's convictions.

**A. <u>Insufficient Evidence for RICO Conspiracy.</u>**

The jury was instructed that RICO conspiracy included the following elements: 1) the charged enterprise, the NAE, existed as alleged; 2) the NAE was engaged in, or its activities affected interstate or foreign commerce; 3) Millsap was associated with the NAE; and 4) Millsap voluntarily and intentionally joined in an agreement or understanding, either at the time it was first reached or at some later time while it was still in existence, to participate directly or indirectly in the affairs of the enterprise through a pattern of racketeering activity. (Trial T. 1953).

The fourth element specifically required proof that Millsap or a coconspirator did or would commit at least two acts of racketeering activity. (Trial T. 1953). Further, the government must have proven Millsap "objectively manifested an agreement to participate . . . in the affairs of [the] enterprise." *United States v. Phillips*, 664 F.2d 971, 1011 (5th Cir. 1981).

Millsap does not challenge that the NAE existed, or that its activities affected interstate commerce. Millsap challenges the sufficiency of the evidence as to the remaining elements.

### 1. **Insufficient Evidence That Millsap Was Associated with the NAE.**

Some knowledge of the enterprise is necessary as part of the requirement of showing association with the enterprise. *United States v. Brandao*, 539 F.3d 44, 51 (1st Cir. 2008). The defendant must be aware of at least the general existence of the enterprise and know about its related activities. *Id.* at 51-52 (citations omitted). The purpose of requiring proof of some knowledge of the nature of the enterprise is to avoid an unjust association of the defendant with the crimes of others. *United States v. Manzella*, 782 F.2d 533, 538 (5th Cir. 1986).

The extent of Millsap's purported association with the NAE was that he paid members for protection while serving time in prison. (Trial T. 578). The evidence was unequivocal that Millsap was not a member of the NAE. The government's evidence showed that Millsap only associated with a single NAE member, Wesley Gullett, and that the two were close friends. (Trial T. 1324). There was no proof Millsap had knowledge of the nature of the NAE, and his conviction was improperly based entirely on his personal association with Gullett rather than any legally sufficient association with the NAE. Millsap was not present in any of the NAE documents introduced at trial, and was never purported to have stepped foot in the NAE "clubhouse."

There was insufficient evidence that Millsap associated with the enterprise, and his RICO-conspiracy conviction must be reversed and dismissed accordingly.

26

## 2. **Insufficient Evidence that Millsap Agreed to Participate, Either Directly or Indirectly, in the Conduct of the Affairs of the NAE.**

A defendant must deliberately join the conspiracy with knowledge of its purpose involving someone committing at least two predicate racketeering acts. *United States v. Harris*, 695 F.3d 1125, 1138 (10th Cir. 2012). Millsap could be guilty of RICO conspiracy related to the NAE even as a non-member only if he deliberately joined the conspiracy knowing its purpose was to conduct or participate in the affairs of the enterprise, and that someone would commit the predicate racketeering acts. *Salinas v. United States*, 522 U.S. 52, 65 (1997).

There was no proof that Millsap had knowledge of the conspiracy's purpose involving someone committing at least two predicate racketeering acts.

Here, there was not substantial evidence that Millsap had knowledge of any—let alone two or more—of the NAE's schemes, or that he agreed that others associated with the NAE would engage in those predicate acts. *See, e.g.*, *United States v. Kragness*, 830 F.2d 842 (8th Cir. 1987).

As stated below, there was insufficient evidence of attempted murder in aid of racketeering and for Millsap's drug-conspiracy convictions. *See Sections II.B. and II.C., infra*.

There was zero proof that Millsap had knowledge of or involvement in the kidnappings of and attacks on Heath Dollar and Kacie Lewis. Further, there was no

27

proof that Millsap had any knowledge of any of the other charged predicate acts, including April Howell's purported trafficking from 2015-2017; the Fergusons' purported trafficking in 2016-2017; Long's purported drug trafficking in 2016-2017; Gullett's use or possession of a homemade silencer; Gullett's possession of various firearms; Knox, Ross, and Conner's purported trafficking in November 2016; Enos's purported drug trafficking activities in 2017; Long's purported possession of guns; and/or Oliver's purported drug trafficking in 2015-2017.

The government's proof showed that Millsap was a drug addict and user who consorted with Gullett but did not associate with the NAE for RICO-conspiracy purposes. Millsap was unaware of virtually everyone else associated with the NAE and the NAE's activities aside from his own purchase of drugs from Gullett. Millsap was not a member of the RICO conspiracy, but rather a customer of it. Millsap's RICO-conspiracy conviction must be reversed and dismissed accordingly.

### B. Insufficient Evidence of Attempted Murder in Aid of Racketeering.

There was insufficient evidence for Millsap's attempted-murder conviction. There was no evidence or even allegation that Millsap was present when Gullett allegedly tried to shoot Hurley on January 4, 2016, and there was no substantial evidence that Millsap aided or abetted Gullett to do anything to Hurley. Further, there was no evidence that Millsap had a purpose of gaining entrance to and

28

maintaining and increasing position in the NAE. The jury had to resort to speculation and conjecture in order to convict Millsap of this offense, and Millsap's attempted-murder conviction must be reversed and dismissed accordingly.

Millsap was charged with aiding and abetting an attempt to murder Bruce Hurley for the purpose of gaining entrance to and maintaining and increasing position in the NAE in violation of 18 U.S.C. § 1959(a)(5). R. Doc. 1058, at 23.

### 1. <u>Insufficient Evidence That Millsap Took Any Substantial Step to Murder Hurley.</u>

Millsap had already pleaded guilty conditionally to the recent delivery charge against him in May 2015. (Trial T. 58-59). Knox's testimony that the person allegedly financing the hit on Hurley was only doing so to avoid a pending jury trial. (Trial T. 328). Given the nature of Millsap's conditional appeal pursuant to Ark. R. Crim. P. 24.3(b), Millsap had no pending jury trial. (Trial T. 1996-1997). By Knox's own testimony, Millsap could not have been the alleged financier accordingly.

There was no proof that Millsap was connected to the attempted shooting of Hurley on January 4, 2016, or that Millsap took any substantial step to accomplish it. All of Knox's testimony was about him and Gullett going to Hurley's home, and Gullett attempting to fire at Hurley in defense when Hurley shot at him. (Trial T. 379-380). Further, there was no proof of Millsap paying anyone to kill Hurley.

29

Other witnesses testified that Millsap made statements about wanting to kill Hurley to get back at him, (Trial T. 591, 717, 722), but that he was just venting and not that he ever actually followed through. Government witness David Singleton testified that Millsap did not make any statements about wanting to kill Hurley, just that he was afraid that Hurley would kill him. (Trial T. 1585).

There was thus insufficient evidence that Millsap took any substantial step to commit murder, and thus insufficient evidence for Millsap's conviction on this count.

## 2. Insufficient Evidence That Millsap Had a Purpose to Gain Entrance and Maintain and Increase Position in the NAE.

In order to establish that a crime of violence was committed for the purpose of maintaining or increasing position in a RICO enterprise, the government must prove the defendant's general purpose in committing the crime was to maintain or increase his position in the enterprise. *United States v. Thai*, 29 F.3d 785, 817 (2d Cir. 1994) (citations omitted). Self-promotion need not have been the defendant's only, or even his primary, concern, if it was committed as an integral aspect of membership in the enterprise. *Id.* The motive requirement is thus satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reasons of his membership in the enterprise or that he committed it in furtherance of that membership. *Id.*

30

There was no allegation Millsap offered to pay anyone to kill Hurley in furtherance of membership in the NAE or because he knew it was expected of him as part of any drug enterprise. Millsap purportedly offered money to kill Hurley to get back at Hurley for "setting him up" related to earlier State charges. (Trial T. 589-591, 718-720, 826-827). Further, Gerald Mills testified that Hurley had threatened Millsap's family. (Trial T. 805-806). Millsap's alleged motive was purely personal. At most, Millsap's motive was practical—but still personal—as he was trying to get rid of a witness that would be crucial to conviction in the State case should he have prevailed in his conditional appeal. Either way, this had nothing to do with the NAE but rather everything to do with Millsap personally. That Gullett or another NAE member or the NAE as a whole may have used money purportedly received from this purported plot to finance their drug purchases, (Trial T. 1010-1011), is immaterial. There was insufficient proof of motive accordingly.

The Second Circuit has reversed and dismissed a conviction for violating 18 U.S.C. § 1959 when the defendant's motive for wanting to bomb a restaurant was "purely mercenary." *Thai*, 29 F.3d at 818.

In *United States v. Ledbetter*, the appellant was the leader of a gang called the North Shore Posse. 929 F.3d 338, 345 (6th Cir. 2019). Ledbetter was convicted of violating 18 U.S.C. § 1959 based on another member of the North Shore Posse

31

named Ussury having killed a man named Hill during a drug deal. *Id.* at 356. The

Sixth Circuit held:

> A rational juror could not . . . have found beyond a reasonable doubt
> that Ussury murdered Hill for pecuniary gain *from* the Short North
> Posse or to boost his position in the gang. Whether Ussury planned to
> murder Hill from the start or resorted to murder only after the drug deal
> had gone bad, Ussury acted alone and without any apparent benefit to
> the Short North Posse. This was the work of a single person, who
> happened to be in a gang. To find sufficient evidence of racketeering
> purpose here would be to convert the violent-crimes-in-aid-of-
> racketeering statute into a gang-status crime, punishing any and all
> violent crimes by gang members, no matter their relation to a
> racketeering enterprise. That sweeps too broadly.

*Id.* (emphases in original).

Just as in *Ledbetter*, "[t]o find sufficient evidence of racketeering purpose

here would be to convert the violent-crime-in-aid-of-racketeering statute into a

gang-status crime, punishing any and all violent crimes by gang members, no

matter their relation to racketeering enterprise." *Id.*

There was insufficient evidence for Millsap's attempted-murder-in-aid-of-

racketeering conviction accordingly.

### C. Insufficient Evidence of Conspiracy to Possess with Intent to Distribute More than 500 Grams of Methamphetamine.

While there was sufficient evidence that Millsap possessed and frequently

used methamphetamine, there was insufficient evidence that Millsap distributed or

sold any meth beyond a single sale in 2014 to Bruce Hurley. There was insufficient

evidence for Millsap's conspiracy-to-distribute-methamphetamine conviction accordingly.

In a conspiracy prosecution, the government must prove beyond a reasonable doubt: 1) the existence of an agreement to achieve some illegal purpose; 2) that the defendant knew of the agreement; and 3) the defendant knowingly became a part of the conspiracy. *United States v. Jensen*, 141 F.3d 830, 833 (8th Cir. 1998) (citation omitted).

This Court has previously ruled "a mere sales agreement [between a buyer and seller] with respect to contraband does not constitute a conspiracy . . . ." *United States v. West*, 15 F.3d 119, 121 (8th Cir. 1994) (citing *United States v. Prieskorn*, 658 F.2d 631, 633 (8th Cir. 1981)). However, purchasing drugs for resale can be sufficient to support a conspiracy conviction. *See United States v. Brown*, 946 F.2d 58 (8th Cir. 1991).

The government did not charge Millsap with any substantive drug offense, only the conspiracy to distribute methamphetamine, just as in *Jensen*, *supra*. And just as in *Jensen*, the evidence that Millsap sold drugs one time did not equate to sufficient evidence of Millsap conspiring with anyone else to distribute meth. Here, there was no proof that Millsap purchased drugs for resale. There was ample evidence that Millsap frequently used meth, and he had meth and a meth pipe in his truck when he was arrested.

33

Here, there was no proof that Millsap distributed meth save for a single sale of well under 500 grams of meth to Bruce Hurley in 2014, and that Millsap was then in custody from April 6, 2016 onward. A lone-wolf single drug sale makes a drug conspiracy not. There was no evidence of any subsequent purpose to deliver. That Gullett may have referred to Millsap as his "money guy," (Trial T. 1552-1553), makes no difference, as the evidence showed Gullett sold meth to Millsap at an inflated price resulting in a major profit to Gullett. (Trial T. 1606-1607). If anything, Millsap was a preferred customer who was actually getting screwed over by his connect, rather than a financier of a criminal enterprise.

The government's evidence amounted "to nothing more than mere buyer seller/exchanges, which does no establish the existence of a conspiracy." Further, there was insufficient evidence that Millsap ever possessed an aggregate of more than 500 grams of meth. Millsap's drug-conspiracy conviction must be reversed and dismissed accordingly.

## III. The District Court Erred by Admitting Numerous Hearsay Statements Pursuant to Fed. R. Evid. 801(d)(2)(E).

The district court admitted virtually any statement attributed to any member of the charged conspiracy. However, just because a declarant is charged in the same conspiracy with a defendant does not make every statement they say admissible pursuant to Fed. R. Evid. 801(d)(2)(E). The district court erred by admitting numerous hearsay statements under this rule accordingly.

34

In order to admit a statement under Fed. R. Evid. 801(d)(2)(E), the district court must find by a preponderance of the evidence that a conspiracy existed involving the declarant and the party against whom the statement is offered and that the statements were made by the declarant in the course of and in furtherance of the conspiracy. *United States v. Cowling*, 648 F.3d 690, 698 (8th Cir. 2011) (citations omitted). The district court must "make an explicit finding as to whether the proponent established the foundational elements . . . ." *United States v. Spotted Elk*, 548 F.3d 641, 661 (8th Cir. 2008).

A casual admission of culpability in no way furthers a conspiracy. *United States v. Moore*, 522 F.2d 1069 (9th Cir. 1975). Merely telling a third party what occurred without some attempt to draw that individual into a conspiracy is not a statement in furtherance of that conspiracy. *United States v. Wood*, 834 F.2d 1382, 1385 (8th Cir. 1987). A coconspirator's statement that the defendant "put her up" to cashing a forged check could not help further the attempt to illegally cash that check, and was thus inadmissible under Arkansas's version of Rule 801(d)(2)(E). *Williams v. State*, 7 Ark. App. 151, 155, 645 S.W.2d 697, 699 (1983).

Similarly, a husband boasting or bragging to his wife about his role in a conspiracy is not a statement made in furtherance of a conspiracy. *See United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979) (one conspirator's statements to his common-law wife that he "was going to Tucson to obtain narcotics from" a

35

man named Yanez was not a statement in furtherance of the conspiracy at issue). Statements that identify a fellow conspirator are only admissible if they identify the role of one conspirator to another. *United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982).

## A. The District Court Never Found Any Conspiracy by a Preponderance That Would Have Permitted Admission of Statements Pursuant to Fed. R. Evid. 801(d)(2)(E).

The district court never at any point found the existence of any conspiracy by a preponderance of the evidence, let alone that there was any conspiracy specifically between any declarant and Millsap specifically. A district court's failure to make this initial determination of whether there was a conspiracy between the declarant and the non-offering party, is grounds for reversal. *See, e.g.*, *United States v. Wells*, 153 Fed. Appx. 417 (9th Cir. 2005). Millsap's convictions must be reversed based on the district court's failure to make these threshold findings.

## B. Jeffrey Knox's Testimony About What Gullett Told Him.

### 1. Knox's Testimony About Gullett Having Sold Drugs and Borrowed Money from Millsap.

None of these statements attributed to Gullett were made in furtherance of the conspiracy. Rather, they were recitations of past events without any attempt to draw Knox into the conspiracy. They were inadmissible accordingly. Erroneous

Appellate Case: 23-2396    Page: 48    Date Filed: 11/08/2023 Entry ID: 5333954

admission of this testimony was incredibly prejudicial, as it painted Millsap as the financier of the NAE despite no evidence of such.

### 2. Knox's Testimony About Gullett's Calls from Jail.

None of these statements were made in furtherance of any conspiracy. Gullett's statement about a prior drug sale to Millsap was merely a recitation of a past event and/or braggadocio, and could not have been made in furtherance of any conspiracy given that it occurred in the past accordingly. Erroneous admission of this testimony was prejudicial, as it implied that Millsap was involved in bringing in meth from California despite no proof of such, and key evidence tying Millsap to Gullett's drug trafficking.

### 3. Knox's Testimony About Millsap Allegedly Paying $30,000 to Kill Hurley.

Again, this was a recitation of a past event without any attempt to draw Knox into the conspiracy. These were "casual comments which were neither intended to further nor had the effect of furthering the conspiracy in any way." *United States v. Green*, 600 F.2d 154, 158 (8th Cir. 1979). This testimony was inadmissible accordingly. Erroneous admission of this testimony was prejudicial in that it formed the key piece of evidence on the attempted-murder count.

The trial court abused its discretion, and Millsap's convictions must be reversed accordingly.

### C. Knox's Facebook Messages with Odom.

Appellate Case: 23-2396    Page: 49    Date Filed: 11/08/2023 Entry ID: 5333954

Over Millsap's objection, the government introduced Facebook messages between Knox and Erik Odom from March 23, 2016 through Knox. (Trial T. 279-280). Odom was not a member of any conspiracy alleged, and was not even a member of the NAE but rather an "off-brand Aryan organization" called the 101 Peckerwood. (Trial T. 279). Odom was not a coconspirator, and his statements were not in furtherance of any alleged conspiracy. Odom certainly was not in a conspiracy with Millsap to do any crime. He was not an NAE member, and his statement did nothing to further the charged conspiracies.

The district court never at any point found the existence of any conspiracy by a preponderance of the evidence, let alone that there was any conspiracy specifically between the off-brand gang member and Millsap. Erroneous admission of this evidence was incredibly prejudicial, as Millsap was grouped in with yet another white-supremacist gang with whom he had no ties. A jury can only ignore the stench of unbridled white hate for so long before giving in and convicting not based on the evidence but based on that association with such reprehensible beliefs and organizations. The trial court abused its discretion by admitting this evidence accordingly.

### D. Duncan's Testimony About Sheila Lackey Telling Him About Opportunity to Steal Truck.

The district court never found that a conspiracy existed related to stealing this truck, and never found any connection between Lackey and Millsap because

38

none existed. Lackey was not charged with any conspiracy, was not a member of the NAE, and had no proven connection to Millsap. Erroneous admission of these statements attributed to her was prejudicial because it allowed Duncan to testify that Millsap ultimately had Gullett give Duncan two pounds of meth as compensation for his work getting the truck. (Trial T. 588). The trial court abused its discretion accordingly.

### E. <u>Shannon Boyer's Testimony About Gullett Telling Oliver About Missing the Shot on Bruce Hurley.</u>

None of these statements were made in furtherance of any conspiracy. Rather, they were recitations of past events, casual admissions of culpability, braggadocio, and were not admissible pursuant to Fed. R. Evid. 801(d)(2)(E) accordingly. *See, e.g.*, *United States v. Wilson*, 490 F.Supp. 713 (E.D. Mich. 1980), *aff'd*, 639 F.2d 314 (6th Cir. 1981).

Erroneous admission of this testimony was prejudicial, as it was the strongest evidence that an attempted murder actually occurred. Absent this evidence, the jury would have been left with Knox's testimony that Gullett fired at Hurley in self-defense only after Hurley fired at him. (Trial T. 379-380). The trial court abused its discretion, and Millsap's convictions must be reversed accordingly.

### F. <u>John Fondren's Testimony That Oliver Told Him the $30,000 Was Being Offered to Kill Hurley Rather than Beat Him Up.</u>

39

These statements were not made in furtherance of any conspiracy, and there was no attempt to draw Fondren into any conspiracy. Erroneous admission of this evidence was incredibly prejudicial as it buttressed Knox's earlier testimony regarding the purported attempted murder of Hurley. Millsap's convictions must be reversed accordingly.

## G. Paula Enos's Testimony What Shannon Ferguson Told Her the Upcoming Topics for an NAE Meeting Would Be.

These statements were not made in furtherance of any conspiracy. The district court never found the existence of any conspiracy by a preponderance of the evidence, let alone that there was any conspiracy specifically between Ferguson and Millsap regarding Kacie Lewis. Erroneous admission was prejudicial, as it implied some sort of connection between Millsap and the kidnappings and beatings of Heath Dollar and Kacie Lewis despite no proof or even allegation that he was involved. The trial court abused its discretion and Millsap's convictions must be reversed accordingly.

## H. Ferguson's Testimony About What NAE Members Told Him Why They Beat Him Up Right After Doing So.

The statements at issues—NAE members' purported statements to Ferguson shortly after beating him up explaining why they beat him up—were not made in furtherance of any conspiracy, and clearly were not meant to draw Ferguson into any conspiracy with the enterprise that had just "violated" him. Further, there was

40

no proof that Millsap conspired with the NAE members at Ferguson's prison unit to beat him up. Admission of these statements was prejudicial, as it implied a connection between Millsap and the NAE's brutal retaliation against Ferguson for cooperating with law enforcement. This was especially prejudicial given that Millsap was charged with attempted-murder of a different cooperating witness in one of the charged counts, implying that Millsap was guilty of that offense despite no proof of Millsap's involvement in violating Ferguson. The trial court abused its discretion, and Millsap's convictions must be reversed accordingly.

## I. Robert Chandler Testifying About What Corey Ford Told Him.

These statements were not in furtherance of any conspiracy, but rather a mere recitation of past events that were casual admissions of culpability. They were not intended to draw Chandler into the conspiracy. Further, there was no proof that Ford and Millsap conspired to commit any crime together. These statements were improperly admitted accordingly. Erroneous admission was incredibly prejudicial because they implied a connection between Millsap and the NAE's drug trafficking activities despite no proven connection between them.

## J. Loadholt's Facebook Messages Introduced Through Maddox.

### 1. Loadholt's Facebook Messages with Bornallah Banks.

Firstly, these messages were not in furtherance of any conspiracy but merely a recitation of something that had purportedly occurred days prior. Further, there

41

was no proof that Millsap and Banks conspired with one another to do anything. Banks was barely mentioned during the trial, and was purported to be a security guard in California. (Trial T. 1543).

### 2. Loadholt's Facebook Messages with Gullett.

None of these statements were made in *furtherance* of any conspiracy, but were merely attempts to reach one another and later on, attempts to repair their apparently fraught relationship. (Trial T. 1768-1769). Erroneous admission was prejudicial because this evidence established the connection between Gullett and the NAE in Arkansas and Loadholt, the purported supplier in California.

### K. Conclusion.

As the district court noted:

> How do you designate somebody as an unindicted co-conspirator just because you say they are, or is there some process that you go through where I know that this person is an unindicted co-conspirator? I'm not saying I don't trust you, but I'm saying you can always say an unindicted co-conspirator so that person's statement is in to the detriment of the defendant. I don't know that I can necessarily do that.

(Trial T. 1071). And yet that is precisely what the district court did: despite appearing to recognize the error in its prior rulings, the district court continued admitting virtually every statement purported to be coconspirator non-hearsay. Admission of each of the above statements was both erroneous and prejudicial, and Millsap's convictions must be reversed accordingly.

### IV. The Trial Court Abused Its Discretion by Admitting Certain Photos.

42

This Court reviews a district court's rulings on admissibility of evidence for abuse of discretion. *Giblin v. United States*, 829 F.3d 998, 1004-1005 (8th Cir. 2016) (citation omitted). Reversal is warranted when the evidentiary ruling was based on an erroneous view of the law or a clearly erroneous assessment of the evidence and affirmance would result in fundamental unfairness. *Id.* This Court will only reverse when an evidentiary error is not harmless. *Id.*

The government may elicit testimony about the defendant's social or gang association if it is relevant to a disputed issue in the case. *See United States v. Lemon*, 239 F.3d 968, 971 (8th Cir. 2001). Such evidence, however, is not admissible if it is offered solely to prejudice the defendant or to make a propensity argument, such as by linking him to "unsavory characters." *United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005).

## A. __The Trial Court Abused Its Discretion By Admitting the Photo of Millsap in the Pope County Jail.__

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed R. Evid. 404(b). Prior-bad-acts evidence must be: 1) relevant to the material issue; 2) proved by a preponderance of the evidence; 3) higher in

43

probative value than prejudicial effect; and 4) similar in kind and close in time to the charged act. *United States v. Lakoskey*, 462 F.3d 965, 979-980 (8th Cir. 2006).

The photograph at issue was not probative of any association with the NAE and therefore not relevant to any material issue. None of the other people in the photo were allegedly involved in the acts alleged in the second superseding indictment. The photograph was only used to link Millsap with unsavory characters doing an unsavory gesture five years before the conspiracy was alleged to have begun. Any marginal probative value the evidence had—which Millsap does not concede—was outweighed by prejudicial effect. Further, the prior bad act was not similar in kind to the charged act nor was it close in time. The photo was taken five years prior to the alleged onset of the conspiracy, and involves a group of men engaging in a purported "Heil Hitler" salute rather than any actual criminal activity or anything indicative of NAE membership.

This is precisely the type of inadmissible character evidence that Fed. R. Evid. 404(b) exists to exclude. This error was not harmless as the United States focused heavily on upon it in closing arguments, (Trial T. 2057-2058), and argued Millsap was a member of the NAE during the charged time of the conspiracy based on a five-year-old photo of him making a "Heil Hitler" salute with no proven connection to the NAE. Evidence of a defendant's racist beliefs is not relevant if offered merely to show the moral reprehensibility of the beliefs themselves.

44

*Dawson v. Delaware*, 503 U.S. 159, 167-168 (1992). And yet that is precisely what the United States was permitted to do in Millsap's case.

The trial court abused its discretion, and Millsap's convictions must be reversed accordingly.

### B. <u>The Trial Court Abused Its Discretion By Admitting Photos of Millsap's Tattoo of a Motorcycle Clothing Company's Logo.</u>

This evidence had no probative value as it did not establish Millsap's membership in the NAE or any gang, but rather that he was a motorcycle enthusiast who was a fan of Hellanbach's clothing. *See United States v. Newsom*, 452 F.3d 593, 603-604 (6th Cir. 2006); *Burris v. State*, 78 A.3d 371 (Md. 2013).

The government introduced evidence of numerous NAE gang tattoos. (Trial T. 134, 951, 1104, 1119, 1431, 1724). Millsap's simply was not one. The government's witness who testified about the tattoos conceded that the tattoo contained the word "Hellanbach" on the cross, and that a Hellanbach tattoo was *not* a gang tattoo. (Trial T. 1824-1825). The evidence was irrelevant and inadmissible accordingly.

Any probative value the evidence had—which Millsap does not concede— was grossly outweighed by the dangers of unfair prejudice and confusion of the issues. The government was permitted to use Millsap's tattoo of a motorcycle company to argue that he was a white supremacist gang member despite Millsap having no tattoos indicative of NAE membership.

45

This was not a case where the tattoos expressed obvious gang membership or where a gang expert testified that they indicated such gang membership. *See, e.g.*, *United States v. Toliver*, 793 Fed. Appx. 151 (4th Cir. 2010). There was no such testimony here, just a generic tattoo of a motorcycle logo that the government used to argue gang membership. The government witness whom this evidence was introduce through testified that the tattoo resembled the Hellanbach logo, and that Millsap did not have any tattoos explicitly associated with the NAE. (Trial T. 1824-1825, 1934). Any marginal relevance this evidence had—which Millsap does not concede—was thus grossly outweighed by the danger of unfair prejudice and confusing the issues.

This error was not harmless. The United States argued Millsap's tattoo of a cross proved he was a white supremacist and/or NAE member despite Millsap not having any of the characteristic tattoos of the NAE or Nazism or white hate generally. (Trial T. 2056). Millsap certainly did not have an NAE "patch" tattoo or tattoos referring to the NAE, its symbols, or its tenets. (Trial T. 1824-1825) The tattoo was an image of motorcycle clothing company Hellanbach's logo rather than some white-supremacist symbolt, (Trial T. 1824), which was consistent with the government's extensive evidence about Millsap's affinity for motorcycles. (Trial T. 591, 1486-1487). The trial court abused its discretion by admitting this photograph, and Millsap's convictions must be reversed accordingly.

46

## V.    The District Court Abused Its Discretion by Denying Millsap's Motion for Mistrial Based on Juror Intimidation.

This Court will reverse a denial of a mistrial when the conduct at issue prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial. *United States v. Gomez-Diaz*, 911 F.3d 931, 935 (8th Cir. 2018). This Court reviews a district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Sanchez-Garcia*, 685 F.3d 745, 752 (8th Cir. 2012).

In *Remmer v. United States*, 347 U.S. 227 (1953), the Supreme Court held that unauthorized private communications with jurors on matters pending for their deliberation was presumptively prejudicial.

The denial of a mistrial was an abuse of discretion, as the jury's impartiality was crushed by these perceived threats to their safety purportedly caused by and/or associated with Millsap. This juror intimidation was sufficiently prejudicial so as to deprive Millsap of a fair trial. *See, e.g.*, *United States v. Simtob*, 485 F.3d 1058 (8th Cir. 2007); *United States v. Rutherford*, 371 F.3d 634 (9th Cir. 2004). The district court abused its discretion by denying Millsap's motion for mistrial after multiple jurors expressed concerns for their own safety based on out-of-court contact with Millsap's family member, and thus his convictions must be reversed.

## VI.    The District Court Abused Its Discretion by Permitting the Government to Adduce Evidence That Hurley Had Since Been Killed.

47

The trial court abused its discretion by admitting this evidence at it was both irrelevant and overly prejudicial.

## A. __The Fact That Hurley Was Killed Prior to Trial Was Irrelevant.__

This Court reviews relevancy determinations for abuse of discretion. *See United States EEOC v. Technocrest Sys.*, 448 F.3d 1035 (8th Cir. 2006).

While Hurley's death may have been relevant to explain his absence at trial—which Millsap does not concede—his manner of death was not. Further, Hurley's absence was also irrelevant. The government introduced statements and evidence associated with numerous other witnesses who were not called as witnesses at trial, and gave no explanation for their absences. The fact that his death was being investigated by law enforcement was also irrelevant to the charged acts. The trial court abused its discretion accordingly.

## B. __Any Marginal Relevance the Evidence Had Was Substantially Outweighed by Danger of Unfair Prejudice.__

This Court reviews challenges under Fed. R. Evid. 403 for abuse of discretion. *United States v. Robertson*, 948 F.3d 912, 916 (8th Cir. 2020).

While Hurley's death may have been relevant—which Millsap does not concede—his manner of death was not, and was *extremely* prejudicial. The government could have introduced evidence that Hurley was dead or unavailable without detailing the specific manner of death and open investigation into it.

48

The fact that Hurley's death was being investigated by law enforcement was also unfairly prejudicial, as it encouraged the jury to find that Millsap was somehow responsible for Hurley's death despite no proof or even allegation of such. This was particularly prejudicial given that Millsap was charged with a separate, earlier act of attempted murder of Hurley. The jury could have only taken one inference from this otherwise unexplained evidence: that Millsap finished the job despite no proof about Hurley's death other than the fact of it.

The erroneous admission of this evidence was extremely prejudicial, and certainly not harmless. *See, e.g.*, *People v. Golochowicz*, 319 N.W.2d 518 (Mich. 1982). Haley's testimony that Hurley had since been murdered and his death was being actively investigated implied to the jury that Millsap was responsible for Hurley's death, and thus that Millsap was much more likely guilty of the charged act of earlier attempted murder. Further, the fact of Hurley's subsequent murder came up at Millsap's sentencing. (Sent. T. 35-36, 42). The trial court abused its discretion by admitting evidence of this uncharged murder that had no connection to the charged acts, and Millsap's convictions be reversed accordingly.

## VII.   The District Court Clearly Erred in Applying a Two-Point Firearm Enhancement Pursuant to USSG § 2D1.1(b)(1).

USSG § 2D1.1(b)(1) provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug offense. *United States v. Brumley*, 820 Fed. Appx. 490, 492 (8th Cir. 2020). For the

49

enhancement to apply, the government must prove by a preponderance of the evidence that the gun was possessed and it was not clearly improbable that the weapon was connected to the drug offense. *Id.* (quotation omitted).

A district court's finding that a defendant possessed a firearm for purposes of USSG § 2D1.1(b)(1) is reviewed for clear error. *United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001).

There was insufficient evidence that any weapon possessed by Millsap was connected to the drug offense. The district court clearly erred in finding otherwise. 5/24/23 Sentencing T. 8-9; PSR ¶46. Mere possession of a weapon is not enough for the enhancement to apply. *United States v. Lopez*, 416 F.3d 713, 716 (8th Cir. 2005) (citing USSG § 2D1.1, cmt. n.3). The government did not meet its burden.

The United States pointed to Shannon Boyer's testimony that Millsap gave a handgun to Scotty Oliver. (Trial T. 646). However, there was no proof that this weapon was connected to a drug offense. Rather, Boyer testified this exchange occurred in the context of the attempted-murder count regarding Bruce Hurley, not in relation to any purported drug distribution. (Trial T. 645-646). The purported possession during this encounter was insufficient to trigger the enhancement accordingly.

Next, the United States pointed to testimony that officers recovered a firearm from Millsap's wife's truck when they went to Millsap's home to arrest

him. (Trial T. 186). However, Millsap was not present at the time. (Trial T. 186). There was insufficient evidence that Millsap possessed this weapon at all. Further, there was no proof that the weapon found in the backseat of Millsap's wife's truck had any connection to any drug offense. Mere presence of a weapon in another person's car does not establish a connection to any drug offense. Further, the weapon was not found in the same place that drugs were stored.

"In this case, there was no physical relation between the weapon and the drug trafficking activity." *United States v. Castro-Perez*, 749 F.3d 1209, 1212 (10th Cir. 2014); *see also Atkins*, 250 F.3d at 1214 (citation omitted)). Similarly, the gun was not located near drugs or near a drug transaction. *Castro-Perez*, 749 F.3d at 1212. Even though Castro-Perez delivered the gun to someone else during the course of a drug-trafficking conspiracy, the Tenth Circuit found this enhancement was still improper because there was no evidence of a spatial connection between the gun and the drug activity. "When a firearm is not physically present near drugs or trafficking activities, the increased danger of mixing drugs and guns contemplated by the Guidelines is not present." *Id.* (citations omitted).

The district court clearly erred by applying a two-point firearm enhancement, and Millsap's case must be remanded for resentencing accordingly.

### VIII. <u>The District Court Clearly Erred in Applying a Two-Point Enhancement for Maintaining a Drug Premises.</u>

51

USSG § 2D1.1(b)(11) provides for a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance."

This Court reviews factual findings to support this enhancement for clear error. *United States v. Lopez*, 24 F.4th 1205, 1208 (8th Cir. 2022) (citation omitted). While manufacturing or distribution need not be the sole purpose for which the premises was maintained, it must be one of the primary or principle uses for the premises, more than an incident or collateral use. *Id.*

While there was evidence of drugs being delivered to Millsap at his home and evidence of Millsap and several other people using drugs at the home, there was no evidence that Millsap possessed any drugs at the home for the purpose of distributing them, as in *Lopez*, *supra* (Lopez dried and prepared methamphetamine stored in his basement for distribution). Further, there was insufficient proof that Millsap had knowledge of any drug trafficking that occurred at his home after going into custody in 2016. There was insufficient evidence. *See, e.g.*, *United States v. Morales-Ortuno*, 879 F. Supp. 2d 608, 609 (E.D. Tex. Jul. 23, 2012).

The district court clearly erred by applying the 2D1.1(b)(12) enhancement, and Millsap's case must be remanded for resentencing accordingly.

IX.     **The District Court Clearly Erred in Attributing Six Criminal-History Points to Millsap's Two Prior State Drug Convictions That Were Related to the Instant Offense.**

The district court clearly erred in attributing six criminal-history points for because these two convictions were not prior sentences because they were relevant conduct to the federal conspiracy.

The term "prior sentence" includes any sentence previously imposed upon an adjudication of guilt, if the sentence was "for conduct not part of the instant offense." USSG § 4A1.2(a). Conduct is "part of the instant offense" if it is "relevant conduct to the instant offense" under the provisions of USSG § 1B1.3.

In determining under USSG § 4A1.2(a)(1) whether a prior conviction should not be counted because it was imposed for relevant conduct, "[c]onduct underlying a prior conviction is not relevant to the instant offense if the former conviction was a severable, distinct offense from the latter." *United States v. Weiland*, 284 F.3d 878, 881 (8th Cir. 2002) (citation omitted). Factors this Court has consistently applied include "temporal and geographical proximity, common victims, common scheme, charge in the indictment, and whether the prior conviction is used to prove the instant offense." *United States v. Pinkin*, 675 F.3d 1090, 1091 (8th Cir. 2012) (quotation omitted). This Court reviews for clear error. *See United States v. Hernandez*, 712 F.3d 407 (8th Cir. 2013).

Here, the two prior State convictions at issue were not severable or distinct from the federal drug conspiracy charge because they occurred during the charged conspiracy, involved methamphetamine, involved distribution, were used in part to

53

prove the federal offenses, and occurred in the same counties. The conspiracy was alleged to have occurred from 2014 to the date of the filing of the second superseding indictment on September 3, 2019. R. Doc. 1058, at 12. The conduct in paragraph 68 occurred on May 2, 2014, and the conduct in paragraph 69 on July 6, 2016, both within the timeframe alleged. All of the government's case involved allegations in Pope and Pulaski Counties. The conviction in paragraph 68 was for possession of meth with intent to deliver in Pope County, and the conviction in paragraph 69 was for possession of meth with intent to deliver in Pulaski County.

The government introduced significant evidence about the conviction paragraph 68 at Millsap's trial, arguing it was part of the charged conspiracy and focusing on it heavily. (Trial T. 46-61). The government actually introduced the charging document from that case, the conditional plea agreement paperwork, the judgment for that case, and even an order of destruction of evidence filed in that case after it was closed. (Trial T. 58-61). The conviction listed in paragraph 68 was explicitly listed as part of the relevant conduct in Millsap's PSR. (PSR ¶26).

The government introduced significant evidence about the conviction paragraph 69 at Millsap's trial. (Trial T. 1836-1846, 1850-1857). The government actually introduced the methamphetamine and paraphernalia associated with Millsap's June 22, 2016 arrest that led to the conviction in paragraph 69. (Trial T.

54

1841-1843, 1856, 1868-1874) The conviction listed in paragraph 69 was explicitly listed as part of the relevant conduct in Millsap's PSR. (PSR ¶11).

The two prior convictions were related conduct rather than "prior sentences" for purposes of criminal-history scoring. The district court clearly erred in finding otherwise. Millsap's sentences must be reversed and remanded for resentencing based on this error accordingly.

## X.     The District Court Erroneously Failed to Apply USSG § 5G1.3.

This Court reviews the application of USSG § 5G1.3 de novo. *United States v. Winnick*, 954 F.3d 1103, 1104 (8th Cir. 2020). Section 5G1.3(b) explains how to treat an undischarged term of imprisonment which "resulted from another offense that is relevant conduct to the instant offense" when "such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."

In *Winnick* this Court laid out four steps for applying section 5G1.3: (1) "determine whether any time spent in custody 'resulted from . . . relevant conduct to the instant offense of conviction'"; (2) adjust the sentence downward "[f]or time already spent in custody for solely relevant conduct . . . unless the Bureau of Prisons will otherwise credit it"; (3) determine "what to do with time spent in custody for solely non-relevant conduct or a mixture of relevant and non-relevant conduct. At this step, the district court has a choice about whether to give credit"; and (4) decide whether to grant a discretional variance. 954 F.3d at 104-105.

55

Millsap's convictions listed in paragraphs 68 and 69 were explicitly listed as relevant conduct in the PSR. (PSR ¶11, 26, 68-69). On May 14, 2015, Millsap was sentenced to an aggregate term of 20 years of imprisonment in the ADC. (PSR ¶68). And on December 12, 2016, Millsap was sentenced to five years of imprisonment in the ADC. (PSR ¶69). Millsap was actually in Arkansas state custody serving this sentence when the second superseding indictment was filed, and was initially transferred from state custody in February 2019. Add. 2-3; R. Doc. 717, 739, 926-1. In such instances, "the district court should note the reduction in the judgment to comply with USSG § 5G1.3." *United States v. McKenzie*, 79 F.4th 924, 926 (8th Cir. 2023). However, the district court did not do that here or even refer to USSG § 5G1.3 at any point. Just as in *McKenzie*, this Court must remand Millsap's case for resentencing for the district court to apply USSG § 5G1.3.

## XI. The District Court Abused Its Discretion by Considering the Fact of Hurley's Murder Against Millsap at Sentencing.

A district court abuses its discretion when it "gives significant weight to an improper or irrelevant factor." *United States v. Ballard*, 872 F.3d 883, 885 (8th Cir. 2017) (citations omitted). Here, the fact that Hurley was subsequently murdered was an improper or irrelevant factor. The district court pointed to Hurley's death as a primary factor influencing its decision to impose a life sentence. (Sent. T. 42).

56

Giving significant weight to this improper factor was an abuse of discretion. *See Ballard, supra*; *United States v. Hodge*, 469 F.3d 749 (8th Cir. 2006). Millsap was not charged with or even alleged to have caused Hurley's death. While attempted-murder is obviously a serious offense, it pales in comparison to actual murder. The district court abused its discretion in relying on this improper sentencing factor, and Millsap's life sentence must be reversed and his case remanded for resentencing accordingly.

## XII.  **This Court Must Correct the Judgment to Note Millsap's Pretrial Jail Credit from February 18, 2019 to Sentencing on May 24, 2023.**

Millsap entered federal custody on February 18, 2019, R. Doc. 729, and his sentencing was on May 24, 2023. R. Doc. 2769. Despite ruling it would do so, the district court made no specific notation regarding the 1,557 days of pretrial jail credit it granted against Millsap's sentence. The judgment states only: "Credit for time served." Add. 7; R. Doc. 2772, at 3. This Court may correct a clerical error at any time. Fed. R. Crim. P. 36. This Court must correct this clerical error in the judgment or remand for the district court to make the correction.

57

## **CONCLUSION**

Appellant respectfully requests this Court reverse and dismiss his convictions; or alternatively reverse and remand for retrial; or alternatively remand for resentencing.

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Michael@LCArkLaw.com

58

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. (32)(a)(7) because the brief uses a proportionally spaced typeface and contains less than 13,000 words. This brief contains 12,975 words—excluding the parts of the document exempted by Fed. R. App. P. 32(f)—in size 14, Times New Roman font. This brief was drafted using Microsoft Word for Mac Version 16.57 (22011101).

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Michael@LCArkLaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 28A(h)

This brief complies with the typeface requirements of Eighth Cir. R. 28A(h), because this brief is in PDF format. Counsel certifies that the brief and addendum have been scanned for viruses and are virus-free.

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*

59

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2023, I mailed 10 copies to the Clerk of the Eighth Circuit Court of Appeals and one copy to the United States Attorney's Office for the Eastern District of Arkansas.

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Michael@LCArkLaw.com
