NO. 23-2396
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff/Appellee | ) | Appellate Court No. 23-2396 |
| | ) | |
| v. | ) | Appeal from the United States |
| | ) | District Court for the Eastern |
| **MARCUS MILLSAP** | ) | District of Arkansas |
| | ) | |
| Defendant/Appellant | ) | Honorable Brian S. Miller |
| | ) | |

_____

Appeal from the United States District Court
For the Eastern District of Arkansas
The Honorable Brian S. Miller, Presiding
District Court No. 4:17-cr-00293-BSM

_____

**APPELLANT'S REPLY BRIEF**
_____

MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Michael@LCArkLaw.com

# A. **TABLE OF CONTENTS**

A. Table of Contents……………………………………………………………2

B. Table of Authorities……………………………………………………....3

C. Argument……………………………………………………………………4

    I.   Appellee Misstates Key Caselaw on the IADA Issue.

    II.   Appellee Misstates Key Facts About the IADA Issue.

    III.   The IADA Makes No Distinction Between Who Ordered the Detainer; Only Whether it Was Lodged.

    IV.   The United States Did Take Every Action Possible to Clarify the Applicable Standard, But Only Once it Realized There Was an IADA Violation on the Horizon.

    V.   Millsap Did Not Waive Anything by Objecting to the District Court Issuing an Advisory Opinion.

    VI.   *Macomber* is Inapplicable.

    VII.   The Purported Coordination Between and Terminology Used by White Supremacy Organizations Simply Was Not at Issue.

    VIII.   The Government's Argument that Hurley's Death was Admissible Because Millsap *Could* Have Commented on Hurley's Absence Puts the Cart Before the Horse.

D. Conclusion…………………………………………………………………11

E. Certificate of Compliance with Rule 32(a)………………………………...12

F. Certificate of Service………………………………………………………12

# B. TABLE OF AUTHORITIES

**Cases**

<u>Supreme Court of the United States</u>

*Chafin v. Chafin*, 568 U.S. 165 (2013)……………………………………………..9

*Mauro v. United States*, 436 U.S. 340 (1978)……………………………………….4

*New York v. Hill*, 528 U.S. 110 (2000)……………………………………………...5-6

<u>Eighth Circuit</u>

*Baxter v. United States*, 966 F.2d 387 (8th Cir. 1992)………………………………..4

*Hawse v. Page*, 7 F.4th 685 (8th Cir. 2021)…………………………………………...9

*Schumacher v. United States*, 216 F.2d 780 (8th Cir. 1954)…………………………10

*United States v. Macomber*, 717 F.3d 607 (8th Cir. 2013)…………………………….9

<u>Other Circuits</u>

*Brown v. Wolff*, 706 F.2d 902 (9th Cir. 1983)…………………………………………...5

*Johnson v. Williams*, 66 F.2d 842 (3d Cir. 1981)…………………………………………..6

*United States v. Fulford*, 825 F.2d 3 (3d Cir. 1987)………………………………………6

*United States v. Roy*, 771 F.2d 54 (2d Cir. 1985)……………………….................4-6

<u>State Courts</u>

*Gallimore v. State*, 944 P.2d 939 (Okla. Crim. App. 1997)………………………...8

*People v. Jones*, 495 N.W.2d 159 (Mich. Ct. App. 1992)………………………….5

**Statutes and Rules**
Interstate Agreement on Detainers Act, 18 U.S.C. App. III……………………...4-9

# C. ARGUMENT

I. **Appellee Misstates Key Caselaw on the IADA Issue.**

The United States cites *Mauro v. United States* and *Baxter v. United States* for the proposition that the "IADA applies to a state prisoner facing federal charges only if a detainer based on the federal charges was lodged against him *before* he was transferred from state to federal custody." Appellee's Brief at 14 (emphases in original) (citing 436 U.S. 340, 351, 361 (1978); 966 F.2d 387, 389 (8th Cir. 1992)). However, neither case held such; rather, both dealt primarily with whether a writ of habeas corpus ad prosequendum constituted a detainer for IADA purposes. The government misstates these cases accordingly. Further, the United States omits a key portion of this Court's ruling in *Baxter*:

> Once the federal government lodges a detainer against a prisoner with state prison officials, however, the IADA applies. . . . Because the detainer remains lodged against the prisoner until the underlying charges are finally resolved, the [IADA] requires that the disposition . . . be obtained before the prisoner is returned to the sending state.

966 F.2d at 389 (citing *Mauro*, 436 U.S. at 361-362) (internal quotations omitted).

The United States cites *United States v. Roy* for the proposition that if "a prisoner is initially brought to federal court pursuant to a writ at time when no detainer has been lodged, the Agreement does not apply." Appellee's Brief at 14 (citing 771 F.2d 54, 58-59 (2d Cir. 1985)). The United States omits the next portion of the *Roy* opinion where the Second Circuit held:

4

> But once the detainer is lodged . . . the Agreement is applicable, and court appearances occurring thereafter are governed by the Agreement, whether such appearances are arranged under the authority of the detainer or a writ. . . . The lodging of the detainer precipitates the range of adverse consequences that the Agreement was designed to mitigate . . . and the prisoner's right to limit the duration of the detainer and his right to avoid a succession of prolonged confinements away from the place he is serving his current sentence are both entitled to be vindicated at all times after the detainer has been lodged. Once a detainer is lodged the prior issuance of a writ cannot insulate the Government from the requirements of the Agreement during all subsequent demands for production of the prisoner in connection with the prosecution of the federal charges.

*Id.* Here the detainer was lodged February 20, 2019. Thus, regardless of how the United States obtained his initial appearance—by writ, detainer, or otherwise—is immaterial, as the IADA applied once the detainer was lodged.

Next, the government cites *New York v. Hill* for the proposition that "Millsap's refusal to agree to accept a trial date within the speedy trial period he claimed applied constitutes a waiver." Appellee's Brief at 18 (citing 528 U.S. 110, 114 (2000). However, the cases cited in *Hill* note that a waiver occurs if a defendant fails to object to a continuance on IADA grounds, *see People v. Jones*, 495 N.W.2d 159 (Mich. Ct. App. 1992), or agrees to a continuance that places the trial outside of the IADA's speedy-trial period. *See Brown v. Wolff*, 706 F.2d 902 (9th Cir. 1983). Neither of those things occurred here. Rather, Millsap asserted his IADA speedy-trial

5

rights and then refused to agree to moving his jury trial to an *earlier* date than it had already been set for months just to be reset back to the current setting to skirt the IADA. *Hill* is inapplicable accordingly.

Further, the government's citation to *Johnson v. Williams* is misleading, Appellee's Brief at 14-15 (citing 66 F.2d 842 (3d Cir. 1981)), as the prisoner in that case was only in the receiving state after having escaped from the sending state and committed new criminal acts in the receiving state. Similarly, the government's citation to *United States v. Fulford*, 825 F.2d 3 (3d Cir. 1987) is inapposite as that case dealt only with whether an arrest warrant constituted a detainer for IADA purposes.

According to the government's own caselaw, the IADA applied because Millsap's appearances in federal court occurred after the detainer was lodged with the ADC on February 20, 2019. *See Roy*, 771 F.2d at 58-59.

II. **Appellee Misstates Key Facts About the IADA Issue.**

The United States argues the district court denied the motion for the same reason it denied Gullett's motion under the IADA—because the IADA did not apply to him. Appellee's Brief at 5. However, this is simply untrue. Rather, the district court ruled that a detainer was actually filed and that it had not ruled whether the IADA applied to Millsap's case. (Tr. May 24, 2019, 61, 80). The district court later found the IADA did apply to Millsap's

case, (Tr. May 24, 2019, 71), but that good cause existed for the delay at issue. (R. Doc. 1439).

The first writ used to bring Millsap to federal court noted he was still in state custody and was to be returned to state prison following conclusion of his federal proceedings. (R. Doc. 629). Millsap then remained in state ADC custody until after his federal sentencing, only making parole and moving into federal custody on June 7, 2023. (R. Doc. 2782).

Next, the government argues that Millsap did not request that the district court set a trial for a date certain within the 120-day period. Appellee's Brief at 22. This too is simply untrue. Rather, Millsap demanded a speedy trial pursuant to the IADA, and refused to agree to move up the then-setting by more than four months to feign compliance with the IADA before agreeing to move the trial back to its then-setting in October 2019. (Tr. May 24, 2019, 64-65, 69-71).

The government's attempt to distort the facts surrounding the IADA issue is unavailing accordingly.

### III. The IADA Makes No Distinction Between Who Ordered the Detainer; Only Whether it Was Lodged.

The Unites States appears to blame the district court for the IADA violation in this case because the district court ordered the detainer rather than the United States requesting that it be ordered. Appellee's Brief at 16.

7

That the district court may have ordered the detainer lodged is of no import as the IADA makes no distinction between the government or court initiating it, and as the district court had to approve any detainer for IADA purposes already. *See* IADA Article IV(a). The government cites no law in support of its bald contention because there is none.

IV. **The United States Did Take Every Action Possible to Clarify the Applicable Standard, But Only Once it Realized There Was an IADA Violation on the Horizon.**

The government asserts it "took every action possible to clarify the applicable standard . . . and ensure Millsap had the opportunity to litigate application of the IADA and the speedy trial issue." Appellee's Brief at 18. This is true, but only after it became apparent to the government it had an IADA violation on its hands. The government's failure to realize the IADA implications of its own actions until just prior to the expiration of the IADA's speedy-trial period is not a basis for good cause.

"It is incumbent upon the [government], when invoking the IADA, to verify that it is able to timely try the defendant against whom the detainer is being lodged. To find otherwise would be to render useless the time limitations contained within the Act specifically designed to avoid the problem of delay." *Gallimore v. State*, 944 P.2d 939, 945 (Okla. Crim. App. 1997). Failure to do so is not good cause for delay beyond the 120-day period. *See id.*

8

## V. Millsap Did Not Waive Anything by Objecting to the District Court Issuing an Advisory Opinion.

Federal courts may not give opinions advising what the law would be upon a hypothetical state of facts; to decide those questions would be to issue an advisory opinion which the courts may not do. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *Hawse v. Page*, 7 F.4th 685, 694 (8th Cir. 2021). Millsap's objection to the district court issuing an advisory opinion at the government's request—an objection the district court sustained—was a proper legal argument and did not waive anything related to his IADA claim accordingly.

## VI. *Macomber* is Inapplicable.

The United States cites *United States v. Macomber* for the proposition that Millsap cannot demonstrate bad faith or a pattern of negligence by the government. Appellee's Brief at 22 (citing 717 F.3d 607, 611 (8th Cir. 2013)). However, this Court found that Macomber "has not alleged bad faith by the government or a pattern of negligence." *Macomber* 717 F.3d at 611 (internal quotations omitted). Millsap, by contrast, has asserted bad faith and a pattern of negligence. *Macomber* is inapplicable accordingly.

## VII. The Purported Coordination Between and Terminology Used by White Supremacy Organizations Simply Was Not at Issue.

The United States argues Knox's testimony about Facebook messages from a white supremacist from a different organization asking for an "SOS" was offered

9

as an example of coordination between, and terminology used by white supremacy organizations. Appellee's Brief at 38. However, coordination between white-supremacy gangs and their terminology was not at issue. The evidence was irrelevant, inadmissible, and overly prejudicial accordingly.

### VIII. **The Government's Argument that Hurley's Death was Admissible Because Millsap *Could* Have Commented on Hurley's Absence Puts the Cart Before the Horse.**

Appellee argues the district court did not err in admitting evidence that Hurley had since been killed because Millsap "could" have commented on Hurley's absence to the jury. Appellee's Brief at 49 (citing *Schumacher v. United States*, 216 F.2d 780, 787-788 (8th Cir. 1954)). However, this Court in *Schumacher* made clear that such evidence would only become admissible *after* such a comment on the witness's absence had been made. 216 F.2d at 787-788. Millsap made no such comment on Hurley's absence. As such, evidence explaining that absence—in this case, evidence that Hurley had been killed in Millsap's jury trial for allegedly attempting to kill Hurley—was inadmissible, incredibly prejudicial, and constituted reversible error accordingly.

## D. <u>CONCLUSION</u>

For the foregoing reasons, and those listed in his Appellant's brief, Appellant Marcus Millsap respectfully requests that this Court reverse and dismiss his convictions; or alternatively reverse his convictions and remand his case for retrial; or alternatively reverse his sentences and remand for resentencing; and for any and all just and proper relief to which he may be entitled.

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Fax (501) 370-9306
Michael@LCArkLaw.com

# E. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. (32)(a)(7) because the brief is less than 15 pages and contains fewer than 7,500 words. This brief contains exactly 2,353 words in size 14, Times New Roman font. This brief was drafted using Microsoft Word for Mac Version 16.16.26 (200914).

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Fax (501) 370-9306
Michael@LCArkLaw.com

# F. CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2024, I mailed 10 copies to the Clerk of the Eighth Circuit Court of Appeals and one copy to the United States Attorney's Office for the Eastern District of Arkansas.

/s/ Michael Kiel Kaiser
MICHAEL KIEL KAISER
Ark. Bar Number 2015001
*Counsel for Appellant*
LASSITER & CASSINELLI
1218 W 6th Street
Little Rock, AR 72201
(501) 370-9300
Fax (501) 370-9306
Michael@LCArkLaw.com